1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

JESUS DE LEON,

           Petitioner,

    v.

K. ALLISON,

           Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:11-cv-00945-JLT

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS (Doc. 1)

ORDER DIRECTING CLERK OF COURT TO
ENTER JUDGMENT AND CLOSE FILE

ORDER DECLINING TO ISSUE CERTIFICATE
OF APPEALABILITY

Petitioner is a state proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both parties have filed their written consent to the jurisdiction of the Magistrate Judge for all purposes.  (Docs. 6 & 15).

**PROCEDURAL HISTORY**

Petitioner is in the custody of the California Department of Corrections and Rehabilitation after having been tried and convicted in the Kern County Superior Court.  The jury convicted Petitioner  of, inter alia, first degree murder with special circumstances, attempted willful, deliberate, and premeditated murder, two counts of kidnapping to commit robbery, two counts of robbery, and two counts of conspiracy to commit kidnapping.  (Doc. 20, Ex. A ("Ex. A"), p. 2).  Additionally, the jury found true the allegations of, inter alia, personal and intentional discharge by a principal of a firearm proximately causing great bodily injury or death and commission of the crimes to benefit a criminal

street gang.  (Id.).   The trial court sentenced Petitioner to an indeterminate sentence of life without the possibility of parole, plus three terms of life with the possibility of parole, plus 100 years to life.

Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed Petitioner's convictions but modified the judgment to strike the criminal street gang enhancements from the murder, attempted murder, kidnapping, and robbery counts and to stay both kidnapping counts and the weapon enhancements in the latter two counts.  (Ex. A, p. 2). The resulting sentence was life without the possibility of parole, plus one term of life with the possibility of parole plus fifty-years-to-life.  (Id., pp. 22-23).  Petitioner filed a petition for review in the California Supreme Court that was summarily denied on June 9, 2010.  (Doc. 21, Lodged Documents ("LD") 10).

On June 10, 2011, Petitioner filed the instant petition, raising four grounds for relief.  (Doc. 1). Respondent's answer was filed on March 12, 2012.   (Doc. 20).  Petitioner did not file a Traverse. Respondent contends that grounds three and four in the petition have not been exhausted in state court and therefore the petition should be dismissed.  (Doc. 20, p. 8).

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

"Maybe between eight and 10" times, Garnett sold marijuana to Iniguez, whom Garnett met through his cousin Paul Evangelista, who called Iniguez his friend. Garnett was not a gang member. Garnett knew that Evangelista associated with "the Northwest gang or the Evans Park gang" in Santa Maria. He did not know whether Iniguez associated with a gang.

On October 12, 2003, Iniguez asked Garnett to meet him at a motel in Santa Maria to sell him some more marijuana. Garnett arrived there just after dark with his friend Stoner and went into a motel room with a small bag of marijuana as Stoner waited for him in Garnett's pickup truck. Inside the room, Iniguez introduced Garnett to Jesus De Leon and Steve Alvarez. After a brief conversation, Garnett poked his head out of the room and waved Stoner inside. Stoner brought a suitcase containing two larger bags of marijuana into the room.

After Iniguez, De Leon, and Alvarez talked with Garnett for a few minutes about quality, quantity, and price, Iniguez put Garnett in a headlock. At first, Garnett thought Iniguez was joking, but as he brought his head up he saw De Leon and Alvarez pointing guns at Stoner and him. Iniguez, De Leon, and Alvarez bound Garnett's and Stoner's hands and feet with rags, took cell phones, wallets, and everything else of value at gunpoint from their pockets, and told them "this isn't all the money you have and all the weed that you have." For about five minutes, Iniguez, De Leon, and Alvarez pushed, shoved, and slapped them, insistently asking where more money and more marijuana were. Alvarez hit Stoner above the eyebrow with the

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

butt of his gun, knocking him to the floor.

Iniguez, De Leon, and Alvarez walked Garnett and Stoner into the bathroom, "slammed" them down on the floor, and gagged them with socks stuffed into and rags tied around their mouths. For about the next two hours, Iniguez, De Leon, and Alvarez took turns checking on them in the bathroom. Then, saying "it was time to go," Iniguez pulled them out of the bathroom into the motel room, where two additional men, Reyes Escobedo and Julian Santiago, were present. Santiago gave Garnett "lengthy instructions" for a trip everyone was about to make to Bakersfield. After being completely untied, Garnett was to walk out of the motel room and not run away, was to do nothing to bring attention to him, and was to drive in his truck while Stoner was to ride in their car for security.

Garnett had been to Santiago's house a few times. Even though he considered Santiago a dangerous gang member "deeply involved with crystal meth," he had gone to his house anyway because his cousin Evangelista had always been with him. He had seen "guns laying around" at Santiago's house and had "at least heard of the things he had done before." In the motel room, Santiago told Garnett not to go to the police because he knew Garnett's family and "knew where they were."

At around midnight, Iniguez and Santiago, both of whom had revolvers, left the motel room with Garnett and got into his truck, which he drove. Escobedo left the motel room with Stoner, De Leon, and Alvarez and got into a sedan that he drove behind Garnett's truck.

As instructed, Garnett drove for about three hours, got off the highway to get gas, and drove onto a frontage road near Bakersfield. Shortly after turning onto another road, Santiago told him to stop and to get into the sedan with everyone else so he and Stoner could be dropped off a mile or two away, giving everyone else time to get away as he and Stoner walked back to the truck. Once everyone was in the sedan, Escobedo drove to a construction site, where Garnett and Stoner got out of the car.

His back to the car, Garnett said to Stoner, who was facing the car, "That it's almost over," and then he saw Stoner's face, white with fear, in a "fixed stare" at the car. He heard gunshots, turned his head, and saw Iniguez and Santiago on one side of the car, Alvarez and De Leon on the other side of the car, each with a gun in his hand, and all four seemed to be shooting. He saw Stoner "hit and jerk and fall to the ground" and heard something "whiz" by his own head.

Garnett "ducked down forward," put his hands over his head, and pleaded for his life. When something hit his right hand, instinct took over. He lay still, playing dead, with his eyes closed and his right hand over his head. Something "that felt like metal," cold and round, touched the back of his head, and someone said, "[T]hey're dead, don't shoot anymore. Let's not make any more noise," and he no longer felt the object he thought was the barrel of a gun on the back of his head. After he "heard them get into the car" and "heard the doors shut," he heard the car drive away.

(Exh. A, pp. 2-5).

## DISCUSSION

I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n.

7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406.  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams, 529 U.S. at 409). In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. If fairminded jurists could so disagree, habeas relief is precluded. Richter, 131 S.Ct. at 786. As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction. Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment). The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 131 S.Ct. at 787-788. Put another way, a state court's determination that a claim lacks merit bars federal habeas relief so long as "fairminded jurists could disagree" on the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be

debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings.  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate

1    prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S.

2    648, 659 (1984).

3    **III.  Review of Petitioner's Claims.**

4        The instant petition itself alleges the following as grounds for relief: (1) insufficient evidence

5    to establish the street gang special circumstance pursuant to § 190.2(a)(22); (2) error in instructing on

6    the elements of the predicate offense; (3) the trial court erred in imposing and staying the §

7    186.22(b)(1)(B) enhancements on counts one through four; and (4) the trial court erred in failing to

8    stay sentence on counts three and four, kidnapping for robbery.

9        A.  Petitioner's First Claim

10        Petitioner contends that insufficient evidence was presented related to the street-gang special

11    circumstance, § 190.2(a)(22), because the prosecution showed only that the participants were gang

12    members, not that the crimes were committed to further the activities of the street gang.  This

13    contention is without merit.

14            1.  The 5th DCA's Opinion.

15    The 5th DCA rejected Petitioner's claim as follows:

16    Iniguez and De Leon's challenge focuses on the requisite causal connection between the crimes
       at issue and the Northwest gang. The statute defining the criminal-street-gang enhancement

17    provides *disjunctively*, in relevant part, that "any person who is convicted of a felony
       committed *for the benefit of, at the direction of, or in association with any criminal street*

18    *gang, with the specific intent to promote, further, or assist in any criminal conduct by gang*
       *members*, shall, upon conviction of that felony, in addition and consecutive to the punishment

19    prescribed for the felony or attempted felony of which he or she has been convicted, be
       punished" by "an additional term of five years." (§ 186.22, subd. (b)(1) & (B), italics added.)

20    The statute defining the criminal-street-gang special circumstance authorizes a sentence of life
       without possibility of parole if "[t]he defendant intentionally killed the victim while the

21    defendant was an active participant in a criminal street gang, as defined in subdivision (f) of
       Section 186.22, *and the murder was carried out to further the activities of the criminal street*

22    *gang*." (§ 190.2, subd. (a)(22), italics added.) Iniguez and De Leon focus their challenge on the
       evidence required by the italicized portions of the two statutes.

23
       Santa Maria Police Corporal Daniel Cohen was the prosecution's gang expert. He testified that

24    on October 12, 2003, and October 13, 2003, the Northwest gang was a largely Hispanic
       criminal street gang that had 250 to 500 members and that associated with Southern

25    California's Sureño criminal street gang. Members of the gang had "hundreds of convictions"
       of a "multitude" of mostly violent crimes ("murders, shootings, stabbings, carjackings,

26    robberies, burglaries, vehicle theft," and "narcotics sales") and, in light of high area
       unemployment, "profiteering" crimes ("[r]obbery," "vehicle theft," "[s]elling narcotics,"

27    "[b]urglaries" of homes and vehicles, and thefts of car stereos), all of which constituted the
       gang's primary activities.

28

Testifying about predicate offenses committed by Northwest gang members, Cohen summarized the crimes of Israel Dominguez on August 30, 2001, Jesse Sanchez on October 24, 2001, and Manuel Sauceda on November 19, 2001. (Cf. § 186.22, subd. (e).) All three were active Northwest gang members at the time of the commission of the crimes.

In the predicate offense of August 30, 2001, Dominguez committed, inter alia, attempted murder and assault with a deadly weapon. After his girlfriend told him she did not want to be with him anymore, he fired a shotgun at her through a closed window, striking her in the arm. Later, while hanging out with fellow Northwest gang members, he pointed a shotgun at the head of a rival gang member and pulled the trigger, but the weapon did not fire, after the windows of a Northwest gang member's vehicle were smashed with a crowbar. Investigation showed that Dominguez's racking of the shotgun ejected the live casing that was in the chamber at the time.

In the predicate offense of October 24, 2001, Sanchez committed two kidnap carjackings. In both, his accomplice got into the front passenger seat of a car with the engine running and a man sitting in the driver's seat, ordered the man at gunpoint to drive to a remote location and to get out of the vehicle, and robbed him of his cell phone, car, and other belongings. In one, Sanchez rode in the back seat of the man's car. In the other, he followed his accomplice to the remote location in another vehicle. In one of the two kidnap carjackings, Sanchez and his accomplice both beat the driver at the remote location.

In the predicate offense of November 19, 2001, Sauceda committed possession for sale of a controlled substance. Officers with an outstanding warrant for his arrest found him hiding in a bathroom with crystal methamphetamine, a loaded firearm, paperwork showing narcotics sales, and a scale for measuring narcotics.

Cohen opined that both Iniguez and De Leon were active members of the Northwest gang. He based his opinions on jail classification records, on criminal histories, on gang tattoos, on the flashing of gang signs, and on field interview cards showing police contacts involving admissions of gang membership and associations with each other and with other Northwest gang members. He testified that Alvarez, too, was an active member of the Northwest gang but did not testify about whether Santiago or Escobedo were. A Santa Maria police officer working the gang unit testified about multiple personal contacts he had with Iniguez, De Leon, Alvarez, and Santiago but not Escobedo.

Fear and intimidation are important to the Northwest gang, Cohen testified. Since people who cooperate with law enforcement are frequently the victims of retaliation, the gang's brutal reputation dissuades the reporting of crimes committed by gang members. On the basis of a hypothetical about Northwest gang members who meet two young males in a Santa Maria motel room, take marijuana, money, and everything else of value from them, and drive them to Bakersfield, where they shoot them and leave them, Cohen opined those crimes would have been committed for the benefit of, at the direction of, or in association with the Northwest gang.

Specifically, Cohen testified that those crimes would benefit the Northwest gang by enabling illicit purchases of items like narcotics, firearms, and other weapons and lawful payments of expenses like car payments, groceries, and rent, by enhancing the gang's reputation for brutality and violence and in turn deterring witnesses from testifying against gang members, and by minimizing the possibility of apprehension by involving two jurisdictions in kidnappings and, if committed as intended, murders as to which there were to be no witnesses. The law is settled that evidence of gang affiliation, "including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like," is admissible to "help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt...." (People v. Hernandez (2004) 33 Cal.4th 1040, 1049.) On the briefing and the record, and in light of the disjunctive wording of

8

the statute, there is a sufficiency of the evidence of the criminal-street-gang enhancement if, for example, Iniguez and De Leon committed a felony in association with a criminal street gang with the specific intent to further any criminal conduct by gang members. (§ 186.22, subd. (b)(1)(B).)  Likewise, on the briefing and the record, there is a sufficiency of the evidence of the criminal-street-gang special-circumstance enhancement if the murder was carried out to further the activities of the criminal street gang. (§ 190.2, subd .(a)(22).) From the evidence of Iniguez and De Leon's intentional commission of the crimes in concert with others whom they knew were active Northwest gang members, the jury could reasonably have inferred the requisite association and specific intent. (See, e.g., People v. Leon (2008) 161 Cal.App.4th 149, 162-163; People v. Romero (2006) 140 Cal.App.4th 15, 19-20; People v. Morales (2003) 112 Cal.App.4th 1176, 1198-1199.)

Nonetheless, Iniguez and De Leon seek refuge in other cases, three of which we will discuss briefly. In the first case, People v. Ramon (2009) 175 Cal.App.4th 843, we found an insufficiency of the evidence where the only gang evidence apart from a gang expert's opinion was the commission of crimes by two members of a criminal street gang in territory that the gang claimed. (Id. at pp. 849-853.) Here, on the other hand, the evidence includes the predicate offense of the gunpoint carjacking, kidnap, and robbery by two Northwest gang members, one of whom ordered the victim to drive to a remote location, the other of whom followed in a different vehicle, both of whom beat him after arriving at the remote location. The modus operandi in the predicate offense is eerily similar to Iniguez and De Leon's in the crimes here.

In the second case, People v. Albarran (2007) 149 Cal.App.4th 214, in which a new trial motion was granted as to the criminal-street-gang enhancements but denied as to the underlying offenses, the issue on appeal was whether the admission of gang evidence to show intent and motive on the underlying offenses was prejudicial. (Id. at pp. 226-227.) No issue of the sufficiency of the evidence of criminal-street-gang enhancements was before the court. Cases are not authority for matters not considered. (People v. Stone (2009) 46 Cal.4th 131, 140.)

In the third case, In re Frank S. (2006) 141 Cal.App.4th 1192, an officer stopped a minor for failure to stop at a red light, found him in possession of a concealed five-and-one-half-inch fixed-blade knife, a small bindle of methamphetamine, and a red bandana, and arrested him for the concealed knife. (Id. at p. 1195.) The minor, who was bicycling alone, gave a false name to the officer, said he had several friends in Northern gangs, and claimed he needed the knife for protection against Southerners who thought he supported Northern gangs. (Ibid.) No evidence was in the record that the minor had gang members with him, was in gang territory, or had any reason to expect to use the knife in a gang-related offense. (Id. at p. 1199.) Reversing the criminal-street-gang enhancement, we emphasized that "crimes may not be found to be gang-related based solely upon a perpetrator's criminal history and gang affiliations." (Id. at p. 1195.)

Here, in contrast, the record shows that Iniguez and De Leon, in concert with other gang members, committed crimes that would further the activities of the Northwest gang by enhancing the gang's reputation for brutality and violence, deterring witnesses from testifying against gang members, and lowering the risk of apprehension of gang members (and, in turn, of intensification of law enforcement activity against the gang) by a modus operandi strikingly similar to the one in the predicate offense likewise coming to an end in a remote location.

Our duty on a challenge to the sufficiency of the evidence is to review the whole record in the light most favorable to the judgment for substantial evidence-credible and reasonable evidence of solid value-that could have enabled any rational trier of fact to have made the findings at issue beyond a reasonable doubt. (Jackson v. Virginia (1979) 443 U.S. 307, 318; People v. Prince (2007) 40 Cal.4th 1179, 1251.) In doing so, our duty is not only to presume in support of the judgment the existence of every fact a reasonable trier of fact could reasonably deduce from the evidence, but also to apply the same standard of review to direct evidence and

circumstantial evidence alike. (Prince, supra, at p. 1251.) Our review of the whole record by that standard of review persuades us that a sufficiency of the evidence of the criminal-street-gang enhancements and the criminal-street-gang special circumstance is in the record.

(Ex. A, pp. 11-16).

### 2. Federal Standard.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. However, a federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., quoting Jackson, 443 U.S. at 319. Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations. See id. at 957-958.

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court

10

must ask whether the operative state court decision reflected an unreasonable application of <u>Jackson</u> and <u>In re Winship</u>, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970), to the facts of the case. <u>Id</u>. at 1275.[1]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. <u>Tinsley v. Borg</u>, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. <u>Sumner v. Mata</u>, 455 U.S. 539, 597 (1981).

In <u>Cavazos, v. Smith</u>, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that <u>Jackson</u>

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." <u>Renico v. Lett</u>, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

<u>Cavazos</u>, 132 S.Ct. at 3.

> "<u>Jackson</u> says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id</u>., at 326, 99 S.Ct. 2781.

<u>Cavazos</u>, 132 S.Ct. at 6. [2]

---

[1] Prior to <u>Juan H.</u>, the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims. <u>See</u> <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004); <u>Garcia v. Carey</u>, 395 F.3d 1099, 1102 (9th Cir. 2005).

[2] The 5th DCA's opinion expressly cites the <u>Jackson v. Virginia</u> standard in analyzing the sufficiency claim herein. Moreover, it must be noted that, long ago, the California Supreme Court expressly adopted the federal <u>Jackson</u> standard for

3.  <u>Analysis</u>.

As mentioned, Petitioner contends that, while conceding that the evidence was "strong" and sufficient to establish that Petitioner and two other gang members committed the crime together, the evidence was insufficient to establish he did so "to further the activities" of the Evans Park street gang within the meaning of § 190.2(a)(22).  (Doc. 1, p. 12).

The Ninth Circuit has recognized that California law does not criminalize mere gang membership. <u>See Briceno v. Scribner</u>, 555 F.3d 1069, 1080 (9th Cir.2009 (citing <u>People v. Gardeley</u>, 14 Cal.4th 605 (Cal.1997)). It does, however, increase the penalty for gang related crimes. <u>See id</u>. at 1080–81.  To be liable under the gang special circumstance allegation described in California Penal Code § 190.2(a)(22), the defendant must: (1) carry out an intentional murder; (2) while an active participant in a criminal street gang; and (3) commit the crime for the purpose of furthering the activities of the criminal street gang. Cal.Penal Code § 190.2(a)(22).  Unlike the sentencing enhancement under § 186.22(b)(1), which punishes an act done with the intent to promote the criminal activity of gang members, the special circumstance allegation under § 190.2(a)(22) punishes an intentional murder committed to promote the criminal activity of the gang.  Cal.Penal Code § 190.2(a)(22) (requiring that "the murder was carried out to further the activities of the criminal street gang."; *compare* <u>People v. Albillar</u>, 162 Cal.App.4th 935 (2008)(§ 186.22 has "no requirement that the defendant act with the specific intent to promote, further, or assist a gang; the statute requires only the specific intent to promote, further, or assist criminal conduct by gang members.").

California courts have indicated that the language of § 190.2(a)(22) "substantially parallels the language of § 186.22, subdivision (b)(1)," and that "juries have not likely been misled [by the language differences in the two statutes] for the simple reason the evidence that allows a jury to find a felony was committed for the benefit of a gang within the meaning of § 186.22, subdivision (b)(1), also typically supports a finding the defendant knew of the criminal activities of the gang," for

sufficiency claims in all state criminal proceedings.  <u>People v. Johnson</u>, 26 Cal.3d 557, 576 (1980).  Accordingly, the state court applied the correct legal standard, and this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard.

1  purposes of § 190.2(a)(22).  <u>People v. Carr</u>, 190 Cal.App.4th 475, 488 (2010).[3]  The Carr court went on

2  to make the following salient observation:

> The Supreme Court has observed, "the facts from which a mental state may be inferred must
> not be confused with the mental state that the prosecution is required to prove. <u>Direct evidence</u>
> <u>of the mental state of the accused is rarely available except through his or her testimony. The</u>
> <u>trier of fact is and must be free to disbelieve the testimony and to infer that the truth is</u>
> <u>otherwise when such an inference is supported by circumstantial evidence regarding the</u>
> <u>actions of the accused.</u>" (<u>People v. Beeman</u> (1984) 35 Cal.3d 547, 558–559, 199 Cal.Rptr. 60,
> 674 P.2d 1318.) In other words, just as a jury may rely on evidence about a defendant's
> personal conduct, as well as expert testimony about gang culture and habits, to make findings
> concerning a defendant's active participation in a gang or a pattern of gang activity, it may also
> rely on the same evidence to infer a defendant's knowledge of those activities. (See, e.g.,
> <u>People v. Ferraez</u> (2003) 112 Cal.App.4th 925, 930, 5 Cal.Rptr.3d 640 [expert testimony drug
> offense was gang-related plus evidence defendant received permission from a gang to sell
> illegal drugs at a mall and admission of gang membership constituted sufficient circumstantial
> evidence defendant intended to benefit gang].)

11  <u>Id</u>. at 488-489. (Emphasis supplied).

12       Here, as the 5th DCA noted, there was evidence before the jury that Petitioner, together with

13  other gang members, "committed crimes that would further the activities of the Northwest gang by

14  enhancing the gang's reputation for brutality and violence, deterring witnesses from testifying against

15  gang members, and lowering the risk of apprehension of gang members (and, in turn, of intensification

16  of law enforcement activity against the gang) by a modus operandi strikingly similar to the one in the

17  predicate offense likewise coming to an end in a remote location."  Given the California courts' rather

18  expansive view of the inferences jurors could draw concerning an accused's knowledge of his own

19  gang's activities, viewing this evidence in the light most favorable to the prosecution, and presuming

20  that the jury resolved all conflicting inferences from the evidence against Petitioner, the Court finds

21  that a rational juror "could reasonably have found beyond a reasonable doubt" that Petitioner's crimes,

22  i.e., murder, attempted murder, robbery and kidnapping, were committed "to further the activities of

23  the criminal street gang." <u>Jackson</u>, 443 U.S. at 325–26. Accordingly, this Court is unable to find that

---

[3] "[S]tate courts are the ultimate expositors of state law." <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S.Ct. 1881 (1975).
The Court must defer to a state court's construction of state penal statutes except where it is untenable or an obvious
subterfuge to avoid consideration of a federal issue. <u>Id</u>. at 691 n. 11; <u>Aponte v. Gomez</u>, 993 F.2d 705, 707 (9th Cir.1993)
(federal courts defer to a state court's interpretation of state law unless untenable or a subterfuge); <u>see also Hicks v. Feiock</u>,
485 U.S. 624, 629–30 & n. 3, 108 S.Ct. 1423 (1988) (federal habeas court is not at liberty to disregard a California Court
of Appeal's rulings on state law when the California Supreme Court has denied review). Accordingly, this Court must
follow the California appellate courts' interpretation of § 190.2(a)(22).

the California court's rejection of this claim was objectively unreasonable.  <u>Juan H.</u>, 408 F.3d at 1274–75; <u>see also Jackson</u>, 443 U.S. at 319, 326. Thus, habeas relief is not warranted on this claim.

 B.  <u>Petitioner's Second Claim</u>

 Petitioner next contends that the trial court erred in instructing the jurors on the elements of the predicate offenses and contributed to the "true finding on the gang special circumstances even though there was no evidence in the record to show that the murder was for the benefit of [the street gang]." This contention is also without merit.

 1.  <u>The 5th DCA's Opinion</u>.

The 5th DCA rejected Petitioner's claim as follows:

> De Leon argues that instructional error on the criminal-street-gang enhancements tainted the true finding on the criminal-street-gang special circumstance. On the rationale that the jury's duty was "simply to determine whether the prior convictions occurred," not "whether the prior convictions ... met the appropriate elements," he opined in the negative. Asked by the court for comments, De Leon's attorney said he knew of "no authority one way or the other." The prosecutor added that "giving the elements on four additional crimes not charged in this case is just going to be unduly confusing." Asked by the court if there was any request for those instructions, De Leon's attorney said, "I'll submit it, Your Honor." The court said, "I'm going to give them," and instructed the jury not only with Judicial Council of California Criminal Jury Instructions (2007-2008) (CALCRIM) No. 736 ("Special Circumstances: Killing by Street Gang Member (Pen.Code, § 190.2(A)(22)") but also, immediately afterward, with modified versions of CALCRIM No. 875 ("Assault with a Firearm (Pen.Code, §§ 240, 245(A)(1)-(3) & (B)"), CALCRIM No. 1650 ("Carjacking (Pen.Code, § 215)"), CALCRIM No. 2302 ("Possession for Sale of Controlled Substance (Health & Saf.Code, § 11378)"), and CALCRIM No. 2622 ("Intimidating a Witness (Pen.Code, § 136.1(A) & (B)").

> Although the "longstanding general rule is that the failure to request clarification of an instruction that is otherwise a correct statement of law forfeits an appellate claim of error based upon the instruction given" (<u>People v. Rundle</u> (2008) 43 Cal.4th 76, 151, disapproved on another ground by <u>People v. Doolin</u> (2009) 45 Cal.4th 390, 421, fn. 22), an exception to the rule allows a defendant to "challenge on appeal an instruction that affects his or her substantial rights even when no objection has been made in the trial court" (<u>In re Sheena K.</u> (2007) 40 Cal.4th 875, 881, fn. 2, citing § 1259). Assuming, without deciding, that forfeiture implicates De Leon's substantial right to the effective assistance of counsel, we turn to the substantive issue before us. (<u>Cf. Rundle, supra</u>, at p. 173, fn. 47.)

> The crux of De Leon's argument is that instructing the jury on the elements of the predicate offenses "was inflammatory and prejudicial and contributed to the true finding on the gang special circumstances even though there was no evidence in the record to show that the murder was for the benefit of Evans Park." Having already rejected his insufficiency-of-the-evidence argument (<i>ante</i>, part 1), we turn to the part of his argument characterizing those instructions as inflammatory and prejudicial to the true finding on the criminal-street-gang special circumstance. In that regard, he asserts that the claimed error "undermined [his] federal due

14

process right to a fair trial," citing <u>Chapman v. California</u> (1967) 386 U.S. 18, and that so instructing the jury "was inflammatory because it emphasized the high number [of] crimes that gangs were involved in," citing <u>Williams v. Superior Court</u> (1984) 36 Cal.3d 441.

The standard of review of an instruction challenged on appeal as ambiguous is whether there is a reasonable likelihood that the jury applied the instruction in a way that denied fundamental fairness. (See <u>Estelle v. McGuire</u> (1991) 502 U.S. 62, 72-73 & fn. 3; <u>People v. Clair</u> (1992) 2 Cal.4th 629, 663.)  The charges on which De Leon was on trial-first degree special-circumstance murder, attempted willful, deliberate, and premeditated murder, and kidnapping to commit robbery-were far more egregious that those in the predicate offenses by other gang members-assault with a firearm, carjacking, possession for sale of a controlled substance, and intimidating a witness. In context, no reasonable juror would apply the instructions he challenges in the manner he suggests. (See <u>People v. Wade</u> (1995) 39 Cal.App.4th 1487, 1493.)

(Doc. 20, Ex. A, pp. 16-18).

## 2.  Federal Standard.

The issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Indeed, federal courts are bound by state court rulings on questions of state law. <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). In addition, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." <u>Sawyer v. Smith</u>, 497 U.S. 227, 239 (1990), *quoting,* <u>Dugger v. Adams</u>, 489 U.S. 401, 409 (1989).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. <u>See Estelle v. McGuire</u>, 502 U.S. at 72 & n. 4; <u>Boyde v. California</u>, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).  However, a determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. <u>See Calderon v. Coleman</u>, 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998). If an error is found, the court also must determine that the error had a

15

1   substantial and injurious effect or influence in determining the jury's verdict before granting habeas

2   relief. See id. at 146–47 (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S.Ct. 1710, 123

3   L.Ed.2d 353 (1993)).

4         In determining whether instructional error warrants habeas relief, a habeas court must consider

5   "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction

6   violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even

7   universally condemned.'" <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977) *quoting* <u>Cupp v. Naughten</u>,

8   414 U.S. 141, 146-47; <u>California v. Roy</u>, 519 U.S. 2, 5 (1996).  The burden of demonstrating that an

9   erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional

10  validity of a state court's judgment is even greater than the showing required to establish plain error on

11  direct appeal. <u>Hanna v. Riveland</u>, 87 F.3d 1034, 1039 (9th Cir. 1996).

12        In a criminal case, an evidentiary device must not undermine the fact-finder's responsibility at

13  trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.

14  <u>County Court of Ulster County, N. Y. v. Allen,</u> 442 U.S. 140, 156 (1979); <u>In re Winship</u>, 397 U.S.

15  358, 364 (1970).  A permissive inference is one of the most common evidentiary devices.  <u>Ulster</u>, 442

16  U.S. at 157.  It permits an inference of "the elemental fact from proof by the prosecutor of the basic

17  one and which places no burden of any kind on the defendant." <u>Id</u>.  "Because this permissive

18  presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden

19  of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts

20  of the case, there is no rational way the trier could make the connection permitted by the inference."

21  <u>Id</u>., 442 U.S. at 157; <u>U.S. v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994).  "A permissive inference

22  violates the Due Process Clause only if the suggested conclusion is not one that reason and common

23  sense justify in light of the proven facts before the jury." <u>Francis v. Franklin</u>, 471 U.S. 307, 314-315

24  (1985).

25        The Due Process Clause of the Fourteenth Amendment "protects the accused against

26  conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

27  crime with which he is charged." <u>In re Winship</u>, 397 U.S. at 364.  The United States Supreme Court

28  has held that "the Constitution does not require that any particular form of words be used in advising

16

the jury of the government's burden of proof.  Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." Victor v. Nebraska, 511 U.S. 1, 5 (1994).  This standard reduces the chance that an innocent person will be conviction.  In re Winship, at 362.  Not every single fact upon which the jury relies need be proven to a reasonable doubt.  Many facts not proven to that standard may, collectively, allow the jury to infer that an element of the crime is proven beyond a reasonable doubt.  To enforce Winship's rule, judges must instruct juries that they cannot return a guilty verdict unless the government has met this burden.  Cool v. United States, 409 U.S. 275, 278 (1972).  A jury conviction based upon an impermissibly low quantum of proof violates the jury trial guarantee of the Sixth Amendment.  Sullivan v. Louisiana, 508 U.S. 275, 278 (1993).  A judge can violate a defendant's rights by giving an instruction that undercuts the force of an otherwise proper beyond-a-reasonable-doubt instruction.  See, e.g., Cool, 409 U.S. at 102-103; Sandstrom v. Montana, 442 U.S. 510, 521 (1979).

When a jury instruction is susceptible to a reading that would render the verdict unconstitutional and another that would generate a proper verdict, the reviewing court considers the challenged instruction in light of the full jury charge and in the context of the entire trial.  See Naughten, 414 U.S. at 145-147(consider charge as whole); United States v. Park, 421 U.S. 658, 675 (1975)(consider context of whole trial).  The court must then decide whether there is a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner.  Estelle, 502 U.S. at 72.  A verdict remains valid if a jury instruction only tangentially undercut a proper beyond-a-reasonable-doubt instruction.  Naughten, 414 U.S. at 149-150.

3. Analysis.

Initially, Respondent contends that no clearly established federal law exists regarding whether a state trial court's issuance of instructions on predicate offenses violates a defendant's right to due process.  (Doc. 20, p. 26).  Respondent is correct, and, thus, the state court adjudication could not, by definition, be contrary to or an unreasonable application of a United States Supreme Court rule that has never been promulgated by the High Court.  Accordingly, under the AEDPA, habeas relief is precluded.

However, assuming, arguendo, that the foregoing were not true, Petitioner's claim still fails on

its merits. The state court did not directly address whether instructing the jury on the elements of the predicate offenses—assault with a firearm, carjacking, possession for sale of controlled substances, and intimidating a witness—was in violation of California law, characterizing the instructions instead as "ambiguous." However, the 5th DCA did conclude that any error was harmless, and in that conclusion this Court agrees.

Even where a federal district court finds constitutional error in a habeas case, "in § 2254 proceedings a court must [also] assess the prejudicial impact of constitutional error" under the Brecht standard. Fry v. Pliler, 551 U.S. 112, 121–22 (2007) (citing Brecht v. Abrahamson, 507 U.S. 619 (1993)); Bains v. Cambra, 204 F.3d 964, 977 (9th Cir.2000). Habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637–38 (invoking the harmless error test in Kotteakos v. United States, 328 U.S. 750 (1946)) (internal quotation marks omitted); DePetris v. Kuykendall, 239 F.3d 1057, 1061 (9th Cir.2001).

Here, the state court concluded that, regardless of whether giving instructions on the elements of the predicate offenses was error, it was harmless because "the charges on which [Petitioner] was on trial—first degree special-circumstance murder, attempted willful, deliberate, and premeditated murder, and kidnapping to commit robbery—were far more egregious that those in the predicate offenses by other gang members-assault with a firearm, carjacking, possession for sale of a controlled substance, and intimidating a witness," such that "no reasonable juror would apply the instructions…in the manner [Petitioner] suggests." (Ex. A, p. 16).

The state court's reasoning is unassailable. Under California law, proof of the mere existence of the predicate crimes is all that is required, not proof that each element of the predicate crimes has been satisfied beyond a reasonable doubt. Here, there was no controversy at trial regarding proof for the existence of these prior crimes for purposes of satisfying the statutory enhancement. Accordingly, the only issue was whether unnecessarily instructing the jurors on the elements of those offenses, after the jury had already heard evidence of their existence, had a "substantial and injurious effect" on the outcome of the trial. Where, as here, the actual crimes for which Petitioner was convicted are so dramatically more egregious than those of the predicate offense, and where, otherwise, the jurors were

18

correctly instructed on how to assess the truth or falsity of the § 186.22 enhancement, there is simply

no basis on which the Court can conclude that merely giving instructions on the elements of the

predicate offenses met the <u>Brecht</u> harmless error test.  Accordingly, this claim is rejected.

### C.   Petitioner's Third Claim

Third, Petitioner claims that the trial court erred in imposing and staying the § 186.22(b)(1)(B)

enhancements on counts one through four because those enhancements are inapplicable by virtue of §

186.22(b)(1)(c)(4).  This contention too must be rejected for the following reasons.

### 1.   The 5th DCA's Opinion.

The 5th DCA agreed with Petitioner's claim as follows:

Iniguez and De Leon argue the court lacked the statutory authority to impose a section 186.22 criminal-street-gang enhancement on the counts on which the court also imposed a section 12022.53 personal-use-or-discharge-of-a-firearm enhancement since the requisite pleading and proof of personal use or discharge of a firearm was lacking. We agree. A section 12022.53 personal-use-or-discharge-of-a-firearm enhancement "shall apply to any person who is a principal in the commission of an offense" on pleading and proof of a violation of section 186.22, subdivision (b), and the commission by a principal of "any act specified in subdivision (b), (c), or (d)" of section 12022.53, but a criminal-street-gang enhancement "shall not be imposed on a person in addition to " a section 12022.53 personal-use-or-discharge-of-a-firearm enhancement "unless the person personally used or personally discharged a firearm in the commission of the offense." (§§ 12022.53, subd. (e)(1), (2), italics added; <u>People v. Brookfield</u> (2009) 47 Cal.4th 583, 590.)

The Attorney General does not challenge the premise of Iniguez and De Leon's argument that the prosecutor's choice of a vicarious-liability theory led to the lack of pleading and proof of personal use or personal discharge of a firearm. Nonetheless, the Attorney General argues, by analogy to <u>People v. Gonzalez</u> (2008) 43 Cal.4th 1118 (<u>Gonzalez</u>), that the court had the statutory authority to impose and stay a section 186.22 criminal-street-gang enhancement and to impose and execute a section 12022.53 personal-use-or-discharge-of-a-firearm enhancement on the same counts. In <u>Gonzalez</u>, our Supreme Court analyzed language in section 12022.53, subdivision (f), that a section 12022.5 enhancement "shall not be imposed on a person *in addition to*" a section 12022.53 enhancement; construed "impose" to mean "impose and then *execute*"; and held that "any section 12022.5 firearm enhancements *that were found true* for the same crime must be imposed and then stayed." (<u>Gonzalez, supra</u>, at pp. 1127, 1130, italics added and italics in original.)

In <u>Gonzalez</u>, however, the jury found that the defendant personally used a firearm within the scope of sections 12022.5 and 12022.53 alike. (<u>Gonzalez, supra</u>, 43 Cal.4th at pp. 1122.) Here, the information alleged not that Iniguez or De Leon personally used or discharged a firearm, but only that both were principals, at least one of whom personally used or discharged a firearm within the scope of section 12022.53. Likewise, the jury found not that Iniguez or De Leon personally used or discharged a firearm, but only that both were principals, at least one of whom personally used or discharged a firearm within the meaning of section 12022.53. The Attorney General's reliance on <u>Gonzalez</u> is misplaced.

By choosing a vicarious-liability theory, the prosecutor waived the right to secure findings of personal firearm use and personal firearm discharge. (<u>People v. Salas</u> (2001) 89 Cal.App.4th 1275, 1282-1283, citing <u>People v. Najera</u> (1972) 8 Cal.3d 504, 508-512, disapproved on

another ground by People v. Wiley (1995) 9 Cal.4th 580, 587-588.) On that ground, we modify the judgment to strike, rather than impose and stay, the criminal-street-gang enhancements on counts 1 through 5. Our waiver analysis precludes the need to address the federal constitutional implications of the lack of pleading and proof and of a possible limited retrial solely on the issue of personal use or discharge of a firearm. (Cf. People v. Sengpadychith (2001) 26 Cal.4th 316, 326, citing Apprendi v. New Jersey (2000) 530 U.S. 466, 490.)

(Doc. 20, Ex. A, pp. 18-20).

          2.   Analysis.

             a.   Exhaustion.

      A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

      A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.  Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

      Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998).  In Duncan, the United States Supreme Court reiterated the rule as follows:

In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted).  If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas

1  petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due
2  process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal
   court, but in state court.

3  Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:

4  Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal
   claims in state court *unless he specifically indicated to that court that those claims were based*
5  *on federal law.* See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the
   Supreme Court's decision in Duncan, this court has held that the *petitioner must make the*
6  *federal basis of the claim explicit either by citing federal law or the decisions of federal courts,*
   *even if the federal basis is "self-evident,"* Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999)
7  (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be
   decided under state law on the same considerations that would control resolution of the claim
8  on federal grounds. Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999); Johnson v.
   Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .

9

10 In Johnson, we explained that the petitioner must alert the state court to the fact that the
   relevant claim is a federal one without regard to how similar the state and federal standards for
   reviewing the claim may be or how obvious the violation of federal law is.

11

12 Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added), as amended by Lyons v.

13 Crawford, 247 F.3d 904, 904-5 (9th Cir. 2001).

14     Where none of a petitioner's claims has been presented to the highest state court as required by

15 the exhaustion doctrine, the Court must dismiss the petition. Raspberry v. Garcia, 448 F.3d 1150, 1154

16 (9th Cir. 2006); Jiminez v. Rice, 276 F.3d 478, 481 (9th Cir. 2001). The authority of a court to hold a

17 mixed petition in abeyance pending exhaustion of the unexhausted claims has not been extended to

18 petitions that contain no exhausted claims. Raspberry, 448 F.3d at 1154.

19     Here, the record before the Court establishes that Petitioner has never presented this claim to

20 the California Supreme Court, either in his direct appeal or in a separate habeas proceeding.  (LD 9;

21 11).  Petitioner does not contend otherwise.  Accordingly, the claim is unexhausted and should be

22 dismissed.

23               b.  Failure to State A Cognizable Federal Habeas Claim.

24     Respondent also argues that the claim is exclusively a state law claim, and is therefore not

25 cognizable under federal habeas corpus law.  The Court agrees.

26     Petitioner makes no effort to couch this claim as a federal constitutional violation.  To the

27 contrary, he argues only that the original enhancements are inapplicable by virtue of §

28 186.22(b)(1)(c)(4).  Petitioner argues only that since the enhancements are not authorized under state

1   law, they should be set aside.  (Doc. 1, p. 25).

2        The basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of

3   Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he

4   is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states that the federal courts shall

5   entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in custody in

6   violation of the Constitution or laws or treaties of the United States. <u>See also</u>, Rule 1 to the Rules

7   Governing Section 2254 Cases in the United States District Court. Petitioner does not allege a

8   violation of the Constitution or federal law, nor does he argue that he is in custody in violation of the

9   Constitution or federal law. Petitioner does not allege that the adjudication of his claims in state court

10  "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

11  established Federal law, . . . or resulted in a decision that was based on an unreasonable determination

12  of the facts . . . ." 28 U.S.C. § 2254. Petitioner raises only state law claims, and, generally, issues of

13  state law are not cognizable on federal habeas review.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67

14  (1991)("We have stated many times that 'federal habeas corpus relief does not lie for errors of state

15  law.'"), *quoting* <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-349

16  (1993)(O'Connor, J., concurring)("mere error of state law, one that does not rise to the level of a

17  constitutional violation, may not be corrected on federal habeas").   Indeed, federal courts are bound

18  by state court rulings on questions of state law. <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th

19  Cir.), *cert. denied*, 493 U.S. 942 (1989).  Therefore, this claim should be dismissed for failure to state

20  a cognizable federal habeas claim.

21                    c.  <u>Merits</u>

22       As Respondent correctly notes, the 5th DCA, in its unpublished opinion, agreed with Petitioner

23  and modified the judgment to "strike, rather than impose and stay, the criminal street-gang

24  enhancements on counts 1 through 5."  (Doc. 20, Ex. A, p. 20).

25       The case or controversy requirement of Article III of the Federal Constitution deprives the

26  Court of jurisdiction to hear moot cases.  <u>Iron Arrow Honor Soc'y v. Heckler</u>, 464 U.S. 67, 70 104

27  S.Ct. 373, 374-75 (1983); <u>N.A.A.C.P., Western Region v. City of Richmond</u>, 743 F.2d 1346, 1352

28  (9th Cir. 1984).  A case becomes moot if the "the issues presented are no longer 'live' or the parties

lack a legally cognizable interest in the outcome." <u>Murphy v. Hunt</u>, 455 U.S. 478, 481 (1982).  The Federal Court is "without power to decide questions that cannot affect the rights of the litigants before them." <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971) *per curiam*, *quoting* <u>Aetna Life Ins. Co. v. Hayworth</u>, 300 U.S. 227, 240-241 (1937).

Here, in ground three, the petition seeks reversal of that portion of Petitioner's sentence imposing and staying the criminal street-gang enhancements.  However, as mentioned, this is a *fait accompli* as a result of the 5th District's prior modification of Petitioner's sentence.  Thus, although the state court appears to have arrived at its conclusion pursuing a different path of legal reasoning than Petitioner, the result is the same and Petitioner has already received the relief he has requested.  Because there is no further relief that this Court can provide to Petitioner, no case or controversy exists regarding this claim and, hence, it is moot and will be dismissed.

D.  <u>Petitioner's Fourth Claim.</u>

Finally, Petitioner contends that the trial court erred in failing to stay the sentences on counts three and four, kidnapping for robbery, because this crime was the basis for imposing the life-without-parole sentence on count one. Again, this contention should be denied.

1.  <u>The 5th DCA's Opinion.</u>

The 5th DCA agreed with Petitioner's contention as follows:

> Iniguez and De Leon argue that stays of both kidnapping sentences are necessary. The Attorney General argues the contrary. We agree with Iniguez and De Leon. Since the jury found both guilty of kidnapping and found both special circumstances of murder in the commission of a kidnapping true, we are "compelled to the conclusion as a matter of law that on the record here both crimes were committed pursuant to a single intent and objective...." (<u>People v. Beamon</u> (1973) 8 Cal.3d 625, 639; <u>cf. People v. Harris</u> (1989) 47 Cal.3d 1047, 1102-1103.) Neither may be punished for both crimes, so we modify the judgment to stay both kidnapping sentences. (§ 654, subd. (a); <u>Beamon, supra</u>, 8 Cal.3d at pp. 639-640.)

(Doc. 20, Ex. A, p. 20).

2.  <u>Analysis.</u>

a.  <u>Exhaustion.</u>

As with the previous claim, Respondent argues that this claim is unexhausted and should be dismissed.  The Court agrees.  A review of the record indicates that the claim has never been presented to the California Supreme Court.  Accordingly, it is unexhausted and should be dismissed.

b. <u>Failure to State a Habeas Claim</u>.

Also as with the previous claim, Petitioner does not contend that the state court's error was of federal constitutional dimensions, but rather that the trial court's decision violated state law. Again, this fails to state a cognizable federal habeas claim and therefore should be dismissed.

c. <u>Merits</u>.

Finally, as with the prior claim, the state court, as can be seen from the excerpt quoted above, has already addressed this issue and afforded Petitioner the remedy that he requests. Accordingly, the issue is moot and must be dismissed.

Moreover, the Court declines to issue a certificate of appealability. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (*quoting* <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

       In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

**ORDER**

       For the foregoing reasons, the Court HEREBY ORDERS as follows:

    1.  Grounds one and two in the petition for writ of habeas corpus (Doc. 1), are DENIED with prejudice; Grounds three and four are DISMISSED as unexhausted, as moot, and for failing to state a cognizable federal habeas claim;

    2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

    3.  The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

    Dated:   **April 24, 2014**                    **/s/ Jennifer L. Thurston**
                                               UNITED STATES MAGISTRATE JUDGE